UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KARI SULLIVAN, | ) |
| Plaintiff, | ) Case No. _____ |
| vs. | ) **COMPLAINT AND JURY DEMAND** |
| WELLS FARGO BANK, N.A., a foreign entity, | ) |
| Defendant. | ) |

COMES NOW the Plaintiff, Kari Sullivan, by and through the undersigned counsel, and for her causes of action against Wells Fargo Bank, N.A. ("Wells Fargo"), states as follows:

## INTRODUCTION

1. This Plaintiff brings this action against Wells Fargo, pursuant to the Iowa Wage Payment Collection Law, Iowa Code Section 91A, for payment of wages improperly withheld by Defendant. Pursuant to Iowa Code § 91A.8, Plaintiff is entitled to damages for compensation which the Defendant has intentionally failed to pay, plus liquidated damages, attorneys' fees, and costs. Additionally, Plaintiff brings this action against Wells Fargo in violation of sex discrimination, harassment, and retaliation pursuant to the Iowa Civil Rights Act ("ICRA"), Iowa Code Chapter 216 and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. Lastly, Plaintiff brings this action against Wells Fargo for violations of the provisions of the Wells Fargo Team Member Handbook ("Handbook").

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, based on diversity of citizenship, and 28 U.S.C. § 1331, based on federal question presented by Title VII.

3. This court has personal jurisdiction over Wells Fargo because it regularly transacts business in and has significant and continuous contact with Iowa, including having employees in Iowa.

4. On approximately January 21, 2019, within 180 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against the Defendant with the Iowa Civil Rights Commission, Complaint #01-19-73085, which were referred to the EEOC, Case No. 26A-2019-00274C.

5. On approximately December 5, 2019, less than 90 days prior to filing this Complaint, the Iowa Civil Rights Commission issued an Administrative Release with respect to the Plaintiff's charges of discrimination.

6. Venue is proper in this District under Title VII, 28 U.S.C. § 1332(e)(2) and 28 U.S.C. § 1391, because the Defendant's actions apply to employees in this District, breaches took place in this District, Defendant does business in this District, Plaintiff resides in this District, and the injuries and damages described below were sustained in this District.

## PARTIES

7. Plaintiff is a resident of Elkhart, Polk County, Iowa.

8. Wells Fargo is a publicly held company organized under the laws of the State of California and authorized to do business in the State of Iowa.

## FACTUAL ALLEGATIONS

9. Plaintiff was employed by Wells Fargo beginning in September 2000, until November 7, 2018.

10. At the time of her termination, Plaintiff was a Centralized Sales Manager III, in Wells Fargo's Premier ONE Home Mortgage Division. Plaintiff's responsibilities included the management of Market Managers and Home Mortgage Consultants ("HMC").

11. Plaintiff was the only female of the six (6) Centralized Sales Manager III positions.

12. Plaintiff began reporting to Senior Vice President JR Russell, who was responsible for Wells Fargo's Premier ONE Home Mortgage Division in April of 2018, in preparation for the retirement of Greg Schliesman.

13. From approximately April of 2018 until November of 2018, JR Russell made several derogatory and harassing comments directed to Plaintiff about her gender as a female and regarding women in general.

14. In July of 2018, JR Russell commented on Plaintiff's height and shoe choice telling her "you are too tall" and "why would you ever wear heels." He would not stand next to her if she was wearing heels.

15. When JR Russell began to manage Plaintiff, in a one-on-one meeting he stated to her that people follow her lead but followed it with "you could use the power for good or evil."

16. In three separate meetings in approximately August of 2018, JR Russell referenced his wife as "smoking hot" and "super sexy." On at least one occasion, JR Russell's references to his wife as "smoking hot" and "super sexy" were made in an auditorium with approximately two hundred fifty of Wells Fargo employees present.

17. Following JR Russell's inappropriate comments, several female Wells Fargo employees approached the Plaintiff expressing discomfort with his remarks.

18. The Plaintiff provided the feedback to JR Russell that several female employees sought her out to share their discomfort with his comments. JR Russell told the Plaintiff to "mind your own business."

19. In approximately October of 2018, JR Russell shared a story with the leadership team, including Plaintiff, about how he helps his son find "cute girls" in an objectifying manner.

20. Historically, Plaintiff and her team, were asked to pilot new programs and projects. After JR Russell became Plaintiff's manager she was never allowed to lead or participate in any projects.

21. JR Russell, on more than one occasion, would send emails to Plaintiff blaming her for mistakes her fellow male peers made, and upon discovering the error was not made by Plaintiff or her team, failed to send out a corrective email.

22. JR Russell had a weekly meeting with Plaintiff and her peers.

23. Plaintiff's one-on-one meetings were permanently shortened from one hour to forty-five minutes. Plaintiff's male peers did not have their one-on-one meetings shortened.

24. JR Russell never included Plaintiff in networking events while including her male peers in networking opportunities.

25. Mistakes made by Plaintiff's male peers were treated with less punishment than she would experience.

26. Plaintiff was ultimately terminated for alleged policy violations involving her team. Her male counterparts were not terminated even though her male counterparts had more individuals on their team that allegedly violated the purported policies.

27. Plaintiff inquired about an upcoming job opportunity as a Divisional Leader, a role that she had previously served in an interim capacity for twelve (12) months.

28. JR Russell told her the role as Divisional Leader, which included leading her peers, was not going to be available.

29. It is the Defendant's policy that "any manager or supervisor who learns or observes harassing behavior, even if it's in another business group, or any manager or supervisor who receives a complaint about this kind of behavior, has a duty to take action and should immediately report the behavior or complaint to ER Solution." *Wells Fargo Handbook,* p. 37 (July 2019).

30. Plaintiff complained about JR Russell's harassing comments directed toward her, and the derogatory commentary regarding women, repeatedly to Chad Behrens and Andy Fulton from approximately April of 2018 through November of 2018.

31. At the time, Chad Behrens and Andy Fulton were both in the role of Centralized Sales Manager III.

32. The Defendant breached its policies when it allowed the sexual harassment, other forms of harassment including a hostile work environment, and sex discrimination to occur.

33. The specific policies the Defendant breached are listed within the Defendant Team Member Handbook as follows:

> Our policy is that we do not discriminate on the basis of race, color gender, national origin, religion, age, sexual orientation, gender identity, . . .. p. 18
>
> Wells Fargo prohibits sexual harassment and harassment of any of our team members . . .. Prohibited conduct includes but is not limited to conduct on company property, in company vehicles, on company communication systems. . .. p. 37
>
> In addition to sexual harassment, other forms of harassment may also occur when unwelcome conduct: unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment. p. 38

>Any manager or supervisor who learns or observes harassing behavior, even inf it's in another business group, or any manager or supervisory who receives a complaint about this kind of behavior, has a duty to take action and should immediately report the behavior or complaint to ER Solutions. p. 37
>
>You are expected to act with integrity and always do the right thing. This includes avoiding obscene, threatening, harassing, discriminatory or abusive conduct that is likely to . . . negatively affect coworkers . . .. p. 26

*Wells Fargo Team Member Handbook*, (July 2019).

34. Wells Fargo leadership took no action to address the unlawful behavior and actions of JR Russell.

35. Plaintiff was ultimately terminated for alleged policy violations involving her team. Her male counterparts were not terminated even though her male counterparts had more individuals on their team that allegedly violated the purported policies.

36. Premier ONE was started in January 2015 and was charged with focusing on specific markets around the country in which Wells Fargo desired to increase its market presence or maintain its market presence while decreasing the cost of doing so.

37. Premier ONE grew out of the high cost of maintaining branches and infrastructure in certain areas of the country that were duplicative, not productive, or otherwise not attractive.

38. Premier ONE became an alternative channel allowing HMCs to operate out of lower cost, centralized locations, including Des Moines, Iowa.

39. Premier ONE HMCs were supplied and directed to use corporate-issued wireless phones as their primary source of communication with customers and clients.

40. These wireless phones were leveraged as a way to connect and establish relationships in specific markets.

41. Each HMC's wireless phone number was local to the market that was being served, thus appearing to the customer/client that the HMC was in their area, when in fact the HMC was calling from, for example, Des Moines.

42. Wells Fargo never issued any policies regarding use of the wireless phones, and any existing policies regarding non-monitored phone use were de facto inapplicable to Premier ONE given Wells Fargo mandate that Premier ONE HMCs use the wireless phones for purposes of regional market development.

43. Premier ONE was placed on the 7th floor of Wells Fargo building in Des Moines so that HMC' wireless phones had signals. Premier ONE was not set up on a monitored phone system.

44. Managers within Premier ONE, including the Plaintiff, began voicing the group's concerns regarding the wireless phone practice and lack of policies and controls as early as June 2015.

45. These concerns included lack of controls in place to adequately manage and observe sales activities, and an ability to (i) accurately record timecards; (ii) review call and application quality; and (iii) provide a clear path for HMC compensation.

46. This resulted in a compromised environment for the employees to succeed and a lack of tools or resources for the leaders with Premier ONE to be able to identify and address concerns.

47. No action by Wells Fargo was taken in response to these concerns.

48. Certain steps were taken in late 2017 and early 2018 to address the issues created by Wells Fargo's cell phone use mandate, including reducing the number of required audits and forwarding wireless phone calls to the HMCs' office landlines.

49. There was no indication from Wells Fargo that it viewed any ongoing activity within Premier ONE as being in violation of corporate policy.

50. Prior to her termination, Wells Fargo never previously disciplined Plaintiff or her team for wireless phone use, and Wells Fargo did not issue any warnings or reprimands to Premier ONE or its team members, including Plaintiff and her team.

51. On November 7, 2018, Wells Fargo terminated a number of Premier ONE team members, allegedly for "Wells Fargo's Employment Policy" violations, including Plaintiff, thereby providing Wells Fargo pretext for refusing to pay these team members accrued bonus, commission, and other compensations.

52. This is evidenced by the fact that Wells Fargo did, in fact, eliminate the Premier ONE department in its entirety, including Plaintiff's position as a team member of Premier ONE.

53. Plaintiff was the only one of the Centralized Sales Managers III to be terminated.

54. The remaining Centralized Sales Managers III were all men.

55. Plaintiff's position, following her separation, was not replaced.

56. Following Plaintiff's separation, she filed for unemployment insurance benefits with Iowa Workforce Development("IWD").

57. Wells Fargo did not contest Plaintiff's claim, and IWD subsequently approved Plaintiff's claim.

58. Wells Fargo's termination of Plaintiff for alleged violations of "Wells Fargo's Employment Policy" was wrongful, without basis, and for primary purpose of refusing to pay Plaintiff compensation and benefits she would have been otherwise entitled had Wells Fargo terminated her without cause.

**COUNT I: RECOVERY OF WAGES UNDER IOWA CODE § 91A.8**

Plaintiffs realleges and incorporates herein by reference the allegation of paragraphs 1 through 58 above.

59.     As described above, Wells Fargo had no basis to terminate Plaintiff for cause, and therefore had no basis for withholding payment from Plaintiff of wages owed, as that term is defined by Iowa Code § 91A.2, including, but not limited to, accrued but unpaid paid time off, accrued but unpaid commissions, and accrued but unpaid overtime.

60.     Pursuant to Iowa Code § 91A.8, Plaintiffs are entitled to damages for compensation which the Defendant has failed to pay, plus liquidated damages, attorneys' fees, and costs.

WHEREFORE, Plaintiff prays for a monetary judgement against Defendant Wells Fargo Bank, N.A., in an amount fully sufficient to compensate her for her unpaid wages, for liquidated damages, for attorneys' fees and costs, and for such other relief as the Court may deem appropriate as a result of Wells Fargo's willful violation of the provisions of Iowa Code § 91A.2.

**COUNT II: SEX DISCRIMINATION IN VIOLATION OF
IOWA CIVIL RIGHTS ACT (IOWA CODE CH. 216)**

Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 60 above.

61.     As stated herein, Plaintiff was subjected to harassment by JR Russell while working for Wells Fargo.

62.     The harassment was based on Plaintiff's gender, as a female, which is a protected characteristic.

63.     Wells Fargo leaders, including but not limited to, Chad Behrens and Andy Fulton, knew of the harassment and discrimination and failed to take proper remedial action.

64. Defendants' conduct as alleged above violates the provisions of the Iowa Civil Rights Act, Chapter 216 of the Code of Iowa, prohibiting sex-based discrimination in employment.

65. Plaintiff is entitled to recover judgment in an amount fairly compensating her for her injuries and damages together with attorneys' fees, expenses of litigation and court costs, and she is further entitled to such orders as may be appropriate granting her affirmative relief rectifying the wrongful actions taken against her, as well as any other injunctive, affirmative or equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for monetary judgment against Defendant Wells Fargo Bank, N.C., in an amount fully sufficient to compensate her for losses, emotional distress, attorneys' fees and cost, and for such other relief as the Court may deem appropriate as a result of Wells Fargo's willful violation of the provisions of the Iowa Civil Rights Act.

### COUNT III: SEX DISCRIMINATION IN VIOLATION OF TITLE VII

Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 65 above.

66. Defendants' conduct as alleged above violates the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2, prohibiting sex-based discrimination in employment.

67. Defendant's conduct was willful and wanton and in reckless disregard of Plaintiff's rights.

68. Plaintiff is entitled to recover judgment in an amount fairly compensating her for her injuries and damages together with attorneys' fees, expenses of litigation and court costs, and she is further entitled to such orders as may be appropriate granting her affirmative relief rectifying

the wrongful actions taken against her, as well as any other injunctive, affirmative or equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for a monetary judgment against Defendants Wells Fargo Bank, N.A., in an amount fully sufficient to compensate her for losses, for attorneys' fees and costs, punitive damages, and for such other relief as the Court may deem appropriate as a result of Wells Fargo's willful violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2.

### COUNT IV: RETALIATION IN VIOLATION OF IOWA CIVIL RIGHTS ACT (IOWA CODE CH. 216)

Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 68, as if fully set forth herein.

69. As mentioned previously, Plaintiff complained of the sex-based discrimination based on sex to Chad Behrens and Andy Fulton from approximately April of 2018 through November 2018. Both individuals are in the role of Centralized Sales Manager III.

70. Plaintiff's role and exposure were diminished abruptly and significantly by JR Russell by excluding the Plaintiff from additional pilot programs and networking opportunities, and by decreasing the time of her one-on-one.

71. Plaintiff was wrongfully terminated in retaliation for complaining of JR Russell's sex-based discriminatory conduct.

72. Defendant's conduct as alleged above violates the provisions of the Iowa Civil Rights Act, Chapter 216 of the Code of Iowa, prohibiting retaliation for reporting sex-based discrimination.

WHEREFORE, Plaintiff prays for a monetary judgment against Defendant Wells Fargo Bank, N.A., in an amount fully sufficient to compensate her for losses, emotional distress,

attorneys' fees and costs, and for such other relief as the Court may deem appropriate as a result of Wells Fargo's willful violation of the provisions of the Iowa Civil Rights Act.

### COUNT V: RETALIATION IN VIOLATION OF TITLE VII

Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 72 above.

73. Defendants' conduct as alleged above violates the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-3, prohibiting retaliation for reporting sex-based discrimination.

74. Defendant's conduct was willful and wanton and in reckless disregard of Plaintiff's rights.

75. Plaintiff is entitled to recover judgment in an amount fairly compensating her for her injuries and damages together with attorneys' fees, expenses of litigation and court costs, and she is further entitled to such orders as may be appropriate granting her affirmative relief rectifying the wrongful actions taken against her, as well as any other injunctive, affirmative or equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for a monetary judgment against Defendant Wells Fargo Bank, N.A., in an amount fully sufficient to compensate her for losses, attorneys' fees and costs, punitive damages, and for such other relief as the Court may deem appropriate as a result of Wells Fargo's willful violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-3.

### COUNT VI: WRONGFUL DISCHARGE IN VIOLATION OF TEAM MEMBER HANDBOOK

Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 75 above.

76. At the time of Plaintiff's employment, Defendants provided to Plaintiff its employee Handbook which provided in part as follows:

> Our policy is that we do not discriminate on the basis of race, color gender, national origin, religion, age, sexual orientation, gender identity, . . .. p. 18
>
> Wells Fargo prohibits sexual harassment and harassment of any of our team members . . .. Prohibited conduct includes but is not limited to conduct on company property, in company vehicles, on company communication systems . . .. p. 37
>
> In addition to sexual harassment, other forms of harassment may also occur when unwelcome conduct: unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment. p. 38
>
> Any manager or supervisor who learns or observes harassing behavior, even inf it's in another business group, or any manager or supervisory who receives a complaint about this kind of behavior, has a duty to take action and should immediately report the behavior or complaint to ER Solutions. p. 37
>
> You are expected to act with integrity and always do the right thing. This includes avoiding obscene, threatening, harassing, discriminatory or abusive conduct that is likely to . . . negatively affect coworkers . . .. p. 26

*Wells Fargo Team Member Handbook*, (July 2019).

77. All employees are required to review and sign the Handbook in acceptance of employment with Wells Fargo.

78. All employees are required to annually review and acknowledge the Handbook as a continuation of employment with Wells Fargo.

79. JR Russell's actions violated the Handbook or some requirement of it or prohibition in it, including, but not limited to, workplace conduct.

80. Plaintiff was terminated based on her gender and retaliated against in violation of the Handbook.

81. Defendant's discharge of Plaintiff was in violation of provisions of the handbook.

WHEREFORE, Plaintiff prays for monetary judgment against Defendant Wells Fargo Bank, N.A., in an amount fully sufficient to compensate her for losses and for such other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable to a jury in this case.

*/s/ Wesley T. Graham*_____
Wesley T. Graham  AT0011184
*/s/ Joseph G. Gamble*_____
Joseph G. Gamble  AT0009417
*/s/ Elissa M. Holman*_____
Elissa M. Holman  AT0014056
DUNCAN GREEN, P.C.
400 Locust Street, Suite 380
Des Moines, IA 50309
Telephone:  (515) 288-6440
Facsimile:  (515)288-6448
wtgraham@duncangreenlaw.com
jgamble@duncangreenlaw.com
eholman@duncangreenlaw.com

ATTORNEYS FOR PLAINTIFF